## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FAUSAT OGUNBAYO,** | Civil No. 11-4209 |
| **Plaintiff,** | OPINION |
| v. | HON. WILLIAM J. MARTINI |
| **HERTZ CORPORATION,** | |
| **Defendant.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Presently before the Court is Defendant Hertz Corporation's ("Hertz's") motion for summary judgment. *Pro se* Plaintiff Fausat Ogunbayo opposes the motion. For the reasons that follow, Defendant's motion will be **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was a Hertz employee from March 7, 2001 until March 15, 2011 at Hertz's Newark International Airport Rental Facility. During her employment with Hertz, she was a member of the International Brotherhood of Teamsters Union, Local 641 ("Local 641"). In this action, Plaintiff alleges that the manner in which Hertz suspended and subsequently terminated Plaintiff violated the terms of the collective bargaining agreement negotiated between Hertz and Local 641 (the "Local 641 CBA").

As an initial matter, it is undisputed that the terms and conditions of Plaintiff's

employment with Hertz – including Plaintiff's obligations to behave in a manner consistent with Hertz's rules of employee conduct, as well as Hertz's obligations to take certain formal steps prior to taking disciplinary action against Plaintiff for violating those rules – are governed by the Local 641 CBA.

### i. The Local 641 CBA Four-Step Grievance Process

Article VII of the Local 641 CBA sets forth a four-step grievance process (the "Grievance Process") for Local 641 and Hertz to resolve any "misunderstanding or dispute regarding the interpretation or enforcement of this Agreement." (CBA Art. VII, Ida Smith Cert. Ex. 1, ECF No. 32.)  And thus, an employee[1] who feels their suspension or termination from Hertz violated the terms of the Local 641 CBA may – along with a Local 641 representative – initiate the Grievance Process by filing a formal grievance within five days of the challenged disciplinary action.  (*Id*.)

At Steps I, II and III of the Grievance Process, representatives of Hertz and Local 641 are required to attempt to resolve any dispute between themselves.  If the "dispute or grievance cannot be adjusted [at those steps, at Step IV the dispute or grievance] shall be submitted to arbitration . . . at the request of either [Local 641] or [Hertz], and the decision of such arbitrator shall be final and binding upon the parties."  (*Id*.)

### ii. Plaintiff's Suspension and Termination From Hertz

On January 7, 2011, representatives for Hertz and Local 641 met with Plaintiff to

---

[1]  Throughout this Opinion, when the Court refers to employees of Hertz, it is implied that such employees are also members of Local 641.

discuss concerns about Plaintiff's eccentric and inappropriate on-the-job behavior and related work performance issues.  Plaintiff surreptitiously recorded that meeting with a video camera, in clear violation of Hertz's employee rules of conduct[2] (the "Video-Recording Incident").

As a result, on January 12, 2011, representatives for Hertz and Local 641 met with Plaintiff and informed her they would be conducting a further investigation into the Video-Recording Incident, and that Plaintiff was being suspended from Hertz pending the outcome of that investigation.[3]  On January 14, 2011, Plaintiff initiated the Grievance Process to challenge her suspension-pending-investigation via a letter titled "GRIEVANCE."  (Cert. of Peter O. Hughes, Ex. 3, ECF No. 32.)

Over the next few weeks, and in the course of the investigation of the Video-Recording Incident, Hertz received a number of reports about Plaintiff's bizarre at-work behavior, including: Plaintiff standing in the corner of Hertz's cash room with her pants down because "her legs were burning"; Plaintiff wearing a helmet during work because it made her feel safe; and Plaintiff wearing sunglasses at work because she wanted "to look like a super star."  (Def.'s L. Civ. R. 56.1 Statement of Material Facts Not in Dispute ¶¶

---

[2]  More precisely, the Hertz Corporation Newark International Airport Rules of Conduct ¶ 10 states: "There will be no tape recording, either secretly or openly, by any employee on Hertz property without <u>prior</u> written approval by the City Manager <u>only</u>."  (Smith Cert. Ex. 2.)

[3]  Hertz asserts that its practice of suspending employees pending an investigation is "not itself discipline because, if the investigation terminates favorably to the employee, Hertz restores pay and benefits lost during the investigation."  (Smith Cert.¶ 10.)

25-27, ECF No. 32.)  Plaintiff does not dispute that Hertz received those reports, just that the facts alleged in those reports are untrue.  (Pl.'s Statement of Disputed Facts ¶¶ 10-12, ECF No. 34.)  In addition, a number of employees signed a petition expressing their concern that Plaintiff had the potential to cause serious physical harm to co-workers. (Safety Concern Pet., Smith Cert. Ex. 5.)

On January 31, 2011, Hertz informed Plaintiff that her suspension for violating the work rule against making unauthorized recordings in the workplace would be upheld, and that Plaintiff would be required to obtain medical clearance in order to return to Hertz. Local 641 appears to have agreed that Hertz's actions were appropriate, as evidenced by a January 31, 2011 letter from Local 641 representative Mark Rothbart to Plaintiff explaining the ramifications of Hertz's decision.  (Compl. 36, ECF No. 1.)

Shortly thereafter, Plaintiff submitted a one-page note signed by a physician at Clark First Health, P.A. on February 10, 2011 which states, without further explanation, that Plaintiff would be able to return to work on February 14, 2011.  (Smith Cert. Ex. 6.) On February 15, 2011, Ida Smith, a Hertz Senior Human Resources Partner, sent a letter to Plaintiff indicating that Plaintiff's note was insufficient for Hertz to reinstate Plaintiff, and that if Plaintiff wished to return to Hertz, she would have to undergo a work-fitness examination with psychologist Dr. William Head on February 21, 2011. (Feb. 15, 2011 Letter from Ida Smith, Smith Cert. Ex 7.)  Ms. Smith also informed Plaintiff that her refusal to attend the work-fitness examination could result in her termination from Hertz.

(*Id.*)  In spite of that warning, Plaintiff did not attend that examination.

Thereafter, on March 2, 2011, Ms. Smith informed Plaintiff that in light of her failure to attend, Plaintiff's work-fitness examination had been rescheduled for March 14, 2011. (Mar. 2, 2011 Letter from Ida Smith, Smith Cert. Ex 8.)  Ms. Smith further indicated that Plaintiff would be terminated from Hertz if she failed to attend the rescheduled work-fitness examination.  In spite of that unequivocal warning, Plaintiff failed to attend the March 14, 2011 examination.[4]  As a result, Hertz terminated Plaintiff on March 15, 2011.  (Mar. 16, 2011 Letter from Ida Smith, Smith Cert. Ex 9.)

At this point, the Court wishes to make clear that the record unequivocally demonstrates that appropriate representatives of Local 641 were informed and appropriately involved in every employment action undertaken by Hertz from its initial meeting with Plaintiff on January 7, 2011 to Plaintiff's ultimate termination on March 15, 2011.  The Court also wishes to make clear that there is absolutely no evidence in the record suggesting that Plaintiff filed any formal grievance challenging Hertz's January 31, 2011 conditional suspension, nor the record suggest that Plaintiff attempted to formally contest Hertz's March 15, 2011 termination of her, as evidenced by Plaintiff's failure to file any document which in any way resembles her January 14, 2011 formal

---

[4]  Plaintiff indicates that she did not attend either scheduled Fitness Examinations because "Plaintiff does not have the need to a psychologist." (Pl.'s Statement of Disputed Facts ¶ 18, ECF No. 34.)

5

grievance letter titled "GRIEVANCE" after either of those disciplinary actions occurred.[5]

### iii. Procedural History

On June 11, 2011, Plaintiff filed a complaint in state court against Hertz which sets

forth the following three[6] counts:

> "1.  Disregarding and Violating Plaintiff's contract (attached) between Teamster Local 641 and Hertz Corporation dated December 1 2007 to November 30 2011.
> 2.  Unlawful Termination of Plaintiff's employment by Ida Smith Hertz Corporation in the letter ~~dated~~ she wrote dated March 16, 2011sent to Plaintiff's residence.  Plaintiff was not on duty, was not given hearing in the presence of Union Business Agent.  Plaintiff was placed on suspension in January 2011, placed on un-requested leave of absense, therefore no in-subordination occurred.
> . . . .
> 4.  Condemnation written against plaintiff in Ida Smith's letter dated February 15, 2011 stating that plaintiff is unfit for duty."

(Compl. 9.)  On July 21, 2011, Defendant removed the matter to district court, based on

its uncontested assertion that this Court has jurisdiction over this action pursuant to § 301

of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  The parties

thereafter engaged in discovery, which is now complete.

Presently, Hertz moves for summary judgment on Counts 1, 2, and 4, based on its

assertion that because the Local 641 CBA provides a grievance and arbitration procedure

that is the exclusive means of enforcing the agreement, and because Plaintiff has failed to

---

[5]  Plaintiff did attach a February 2, 2011 letter which Plaintiff sent to Local 641 representative Mark Rothbart summarizing the events which occurred at the January 31, 2011 meeting to her Complaint.

[6]  On December 16, 2011, this Court granted Hertz's motion Rule 12(b)(6) motion to dismiss Plaintiff's "Law Against Discrimination" claim (Count 3) for failure to state a claim. (ECF No. 19.)

exhaust her remedies under those grievance procedures, Plaintiff is precluded from asserting claims alleging a breach of the Local 641 CBA in district court.

## II.   LEGAL ANALYSIS

### i.  Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if, based on the evidentiary record before the Court, a reasonable jury could find for Plaintiff, the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To prevail on its summary judgment motion, Defendant Hertz has the initial burden of establishing that no genuine issue exists.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).   Defendant can do this by presenting evidence that negates essential elements of Plaintiff's claims.  *Id.* at 331.  If Defendant satisfies its initial burden, the Court will grant summary judgment unless Plaintiff points to "facts of record which would contradict the facts identified by the movant [which support summary judgment]."  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).  Plaintiff's allegations alone will not defeat summary judgment.  *Id*.

### ii.  The Labor Relations Management Act

Section 301 of the LMRA provides federal jurisdiction for suits alleging violations of a contract between an employer and a labor organization representing employees.  29

U.S.C. § 185.  Included within § 301's purview are suits brought by an individual

employee against his employer for breach of a collective bargaining agreement.  *See, e.g.,*

*Cole v. Pathmark of Fairlawn*, 672 F. Supp. 796, 799 (D.N.J. 1987) (citing cases).

As an initial matter, the Court notes that § 301 preempts state law claims alleging a

breach of a collective bargaining agreement.  *Franchise Tax Bd. v. Constr. Laborers*

*Vacation Trust*, 463 U.S. 1, 23 (1983).  And thus, Count 1 – in which Plaintiff alleges that

Hertz disregarded and violated the CBA – and Count 2 – in which Plaintiff sets forth the

various ways in which Hertz's termination of her employment allegedly violated certain

formalities in the CBA – are governed by § 301.

In addition, § 301 preempts state law tort claims where resolution of that claim is

substantially dependent upon an analysis of a collective bargaining agreement.  *Lingle v.*

*Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988).  Thus, to the extent "Count

4 - Condemnation written against plaintiff in Ida Smith's letter dated February 15, 2011

stating that plaintiff is unfit for duty" might otherwise be construed as a state law claim

for defamation, because the allegedly defamatory statements were made in the context of

a disciplinary procedure, Count 4 is also governed by § 301.  *Furillo v. Dana Corp.*

*Parish Div.*, 886 F. Supp. 842, 851 (1994) (citing cases).

And having determined that § 301 governs all three counts which are the subject of

this Opinion, the Court also notes that, in general, before resorting to a § 301 suit, an

employee "must attempt to exhaust any exclusive grievance and arbitration procedures

established by a [collective bargaining agreement]." *Orlando v. Interstate Container Corp.*, 100 F.3d 296, 299-300 (3d Cir. 1996) (citing *Clayton v Int'l Union Auto. Workers*, 451 U.S. 679, 681 (1981)).  Accordingly, a plaintiff is generally required to demonstrate exhaustion of the grievance and arbitration remedies under the applicable collective bargaining agreement in order to maintain a § 301 claim.  *Cole*, 672 F. Supp. at 803 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965).

### iii.  Application

In this matter, it is undisputed that the terms and conditions of Plaintiff's employment with Hertz, including the basis for, and formal steps Hertz was required to take prior to suspending or terminating Plaintiff, are set forth in the Local 641 CBA.  It is also undisputed that the Local 641 CBA sets forth a four-step grievance process which required Plaintiff to submit a formal grievance in the event she wished to dispute her suspension or termination.

On the record before this Court, the only time Plaintiff filed a grievance was on January 14, 2011 when she filed a letter titled "GRIEVANCE" challenging her suspension-pending-investigation.  There is no indication that Plaintiff at any point thereafter filed a formal grievance which required a response from Hertz – not when she was suspended pending a medical examination on January 31, 2011, nor when she was formally terminated by Hertz on March 15, 2011.  Moreover, in light of the fact that Plaintiff provided Hertz with a doctor's note dated February 10, 2011 which stated that

Plaintiff was able to return to work, it appears that Plaintiff may have actually agreed with Hertz's decision to suspend her pending a medical examination.

Furthermore, it is undisputed that none of Hertz's actions which Plaintiff alleges violated the Local 641 CBA were ever submitted to arbitration.  Not one.  Nor are there any facts suggesting that Hertz did anything untoward – much less was in any way even remotely responsible for – preventing those challenged actions from being submitted to arbitration.

In short, Plaintiff has failed point to any facts in the record demonstrating that she exhausted the grievance and arbitration remedies set forth in the Local 641 CBA.  Accordingly, summary judgment dismissing her § 301 claims is appropriate.  *See Downey v. United Food & Commercial Workers Union Local 1262*, 946 F. Supp. 1141, 1159 (D.N.J. 1996) (granting summary judgment where "[union employee] failed to exhaust his internal union appeal procedures prior to instituting this lawsuit . . . , failed to establish any reasons to excuse himself from the exhaustion requirement . . . , [and was] therefore precluded from bringing a cause of action against [employer] under § 301); *Cole*, 672 F. Supp. at 803 (summary judgment on employee's § 301 claims where collective bargaining agreement's grievance procedure required arbitration and where there was "no evidence in the record that [the union employee] requested that her case proceed to arbitration or that such a request was specifically denied by the union.").

Furthermore, the Court wishes to note that even assuming, *arguendo*, that

Plaintiff's § 301 claims are not barred based on her failure to exhaust administrative

remedies, summary judgment would still be appropriate as Plaintiff has pointed to no

facts in the record suggesting that the manner in which Hertz suspended and subsequently

terminated her violated Hertz's contractual obligations under the Local 641 CBA.  *See*

*Heffron v. Adamar of New Jersey, Inc.*, 270 F.Supp.2d 562, 575 (2003) (granting

summary judgment on plaintiff's § 301 claims after noting that "[p]laintiff's vague,

self-serving testimony is insufficient to raise a genuine issue of material fact with respect

to whether the employer breached its contractual obligations under the CBA.")

### III.    CONCLUSION

For the reasons stated above, Defendant Hertz's motion for summary judgment

dismissing Count 1, 2 and 4 is **GRANTED**.  An appropriate Order accompanies this

Opinion.

s/William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 5, 2013**

11